# THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### BRYSON CITY DIVISION
### CIVIL CASE NO. 2:12-CV-34-MR
### CIVIL CASE NO. 2:12-CV-69-MR

| | | |
|---|---|---|
| **GREAT OAK NC LENDER, LLC,** | ) | |
| | ) | |
| **Intervenor,** | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM** |
| | ) | **DECISION AND ORDER** |
| **MARSHALL E. CORNBLUM,** | ) | |
| **MADELINE H. CORNBLUM,** | ) | |
| **MICHAEL CORNBLUM,** | ) | |
| **CAROLYN CORNBLUM, and** | ) | |
| **LONGBRANCH PROPERTIES, LLC,** | ) | |
| | ) | |
| **Respondents.** | ) | |
| _____ | ) | |

**THESE MATTERS** are before the Court on Intervenor Great Oak NC

Lender, LLC's ("Great Oak") Petition to Confirm Arbitration Award [CV-69

Doc. 58],[1] and Respondents' Motion to Dismiss for Lack of Jurisdiction,

both filed in case number 2:12-CV-69. [CV-69 Doc. 66]. Also pending are

Great Oak's Motions to Consolidate Cases, to Stay Discovery, and to Stay

the Case, all filed in case number 2:12-CV-34. [CV-34 Docs. 61; 62; 63].

Even though these cases were brought separately, they arise from the

_____

[1] Citations to the record contain the relevant docket (i.e. CV-34 or CV-69) and document number.

same underlying facts and circumstances. More importantly, however, the legal analysis necessary to resolve case number 12-CV-69 will render case number 12-CV-34 moot.  Therefore, the Court finds it more efficient to set forth its reasoning in this comprehensive memorandum, filed in both cases.

## FACTUAL AND PROCEDURAL BACKGROUND

**I.     Case Number 2:12-CV-34.**

Plaintiff Asset Holding Company 5, LLC ("AHC5") filed a Complaint on August 17, 2012, naming as defendants Marshall E. Cornblum, Madeline H. Cornblum, Michael Cornblum, Carolyn Cornblum, and Longbranch Properties, LLC ("Longbranch" and collectively with the natural persons "Defendants"). [CV-34 Doc. 1]. AHC5 alleged that Marshall and Madeline Cornblum, as individuals, borrowed money from United Community Bank ("UCB"), a Georgia corporation, and signed ten separate promissory notes memorializing the debts that arose therefrom.  [Id. at 2]. AHC5 further alleged that Longbranch, a limited liability company owned by Marshall and Madeline Conblum, borrowed additional money from UCB resulting in three more promissory notes.  [Id.].  Thereafter, Marshall, Madeline, Michael, and Carolyn Cornblum each signed a personal guaranty of the three promissory notes executed by Longbranch.  [Id.].   Each of the

thirteen promissory notes was secured by a deed of trust on real property located in either Swain or Jackson Counties, North Carolina. [Id.].

Marshall Cornblum, Madeline Cornblum, and Longbranch defaulted under each of the thirteen promissory notes. [CV-34 Docs. 1 at 3; 7 at 3]. As a result of these defaults, UCB brought non-judicial (i.e. power of sale) foreclosure actions pursuant to N.C. Gen. Stat. § 45-21.16 in Swain and Jackson Counties in accordance with the power of sale provisions contained in each of the thirteen deeds of trust. [Id.]. The Defendants filed a motion in each of the thirteen foreclosure actions to stay the foreclosures and compel UCB to arbitrate its foreclosure claims pursuant to the arbitration clause found in each of the thirteen promissory notes and deeds of trust. [Id.]. UCB opposed Defendants' efforts to compel arbitration. [Id.]. The Clerks of Court for Swain and Jackson Counties rejected the Defendants' motion to compel arbitration and thereafter entered orders of foreclosure in each of the thirteen matters. [CV-34 Docs. 1 at 4; 7 at 3].

The Defendants appealed the orders of foreclosure[2] to the Superior Court Division, renewing their motion to compel arbitration as well. [Id.]. The Superior Court granted the Defendants' motion to compel arbitration

_____

[2] AHC5 alleged Defendants appealed only 12 of the 13 foreclosure orders. [CV-34 Doc. 1 at 4]. Defendants allege they appealed all 13 of the orders. [CV-34 Doc. 7 at 3]. For reasons that are not made plain in the record, one foreclosure appears to have been consummated at that time.

and stayed the twelve foreclosure actions pending arbitration. [Id.]. The parties then began the arbitration process. In the midst of the arbitration proceedings, UCB assigned the promissory notes and deeds of trust to AHC5.[3] [CV-34 Doc. 1-1]. UCB thereafter filed a motion in the arbitration proceeding to add AHC5 as a party-claimant, which the Arbitrator granted. [CV-34 Docs. 1 at 4; 7 at 3]. UCB remained a party to the arbitration proceeding only to defend against the counterclaims asserted against it by the Defendants. [Id.].

In the fall of 2010, the Arbitrator conducted hearings in Swain County and issued a Final Award[4] resolving all claims and counterclaims in favor of UCB and AHC5 on September 20, 2010. [Id.]. UCB and AHC5 then filed a motion in state court, pursuant to 9 U.S.C. § 9 and N.C. Gen. Stat. § 1-569-22, to confirm the Final Award. [CV-34 Docs. 1 at 5; 7 at 3]. In response, the Defendants filed a motion to vacate the Final Award pursuant to 9 U.S.C. § 10 in one of the foreclosure actions and an objection to UCB and AHC5's motion to confirm the Final Award in the others. [Id.]. The Superior Court granted the motion to confirm the Final Award and entered its

_____

[3] The precise manner in which this transaction came about is not at all clear from the record. It appears that UCB first loaned money to AHC5 in order for AHC5 to purchase the Cornblum notes and deeds of trust from UCB whereupon UCB assigned the notes and deeds of trust to AHC5 with UCB retaining a security interest therein. [CV-34 Doc. 31].

[4] AHC5 filed a certified copy of the Final Award with its Complaint. [CV-34 Doc. 1-2].

confirmation judgment regarding all twelve actions that were arbitrated. [CV-34 Docs. 1 at 5; 7 at 4]. The Superior Court's judgment decreed that the Final Award was confirmed and that the properties subject to foreclosure be sold in accordance with the Final Award; that judgment be entered in the amount of $10,979,924.99 against Marshall and Madeline Cornblum, jointly and severally, of which $4,511,362.10 also be entered as a judgment against Michael and Carolyn Cornblum, and Longbranch, jointly and severally.  [CV-69 Doc. 1-7 at 9].

Defendants appealed the Superior Court's judgment to the North Carolina Court of Appeals. [CV-34 Docs. 1 at 5; 7 at 4].  While the appeal was pending, the substitute trustee under the twelve deeds of trust conducted foreclosure sales by power of sale.[5]  At each of the foreclosure sales AHC5 was the sole bidder and purchaser and thereafter acquired title to each foreclosed parcel of real property by receiving trustee's deeds from the substitute trustee.   [CV-34 Doc. 18 at 4-5].  The sole argument raised by the Defendants in their appeal was that the Superior Court lacked subject matter jurisdiction to order arbitration, and to confirm any award flowing therefrom, because of the limited nature of the foreclosure

_____

[5] AHC5 filed a partial satisfaction of judgment in the consolidated foreclosure matters stating that the amount of $10,979,924.99 owed by Marshall Cornblum and Madeline Cornblum should be offset by proceeds in the amount of $5,325,504.30 of which $2,947,419.20 should offset against the $4,511,362.10 owed by Michael Cornblum, Carolyn Cornblum, and Longbranch.  [CV-34 Doc. 42-8 at 7].

proceeding. It is noted that it was *the Defendants* who had demanded that the Superior Court order arbitration, and having been granted their wish then argued that the court did not have the jurisdiction to give them what they had asked for. [CV-34 Docs. 1 at 5; 7 at 4]. The North Carolina Court of Appeals reluctantly agreed with Defendants' jurisdictional argument and vacated the Superior Court's judgment in an opinion rendered on April 12, 2012. In re Cornblum, --- N.C.App. ----, 727 S.E.2d 338 (2012), rev. denied, 366 N.C. 404, 734 S.E.2d 864 (2012), cert. denied, writ denied, 366 N.C. 404, 734 S.E.2d 865 (2012), and rev. dismissed, 366 N.C. 404, 734 S.E.2d 866 (2012). The appellate court held that "submitting this case to arbitration and confirming the arbitration award fell outside of the superior court's subject matter jurisdiction." Id., 727 S.E.2d at 342. The court further held that, as to the Defendants' claim that the foreclosure sales were void as well, their argument was moot since such sales occurred after the parties' rights became fixed in foreclosure. Id.

Four months after the North Carolina Court of Appeals decision, AHC5 filed its Complaint here in case number 12-CV-34. AHC5 asserted claims for breach of contract based on the Defendants' default under the promissory notes, deeds of trust, and guaranty agreements. [CV-34 Doc. 1]. Defendants filed a joint Answer [CV-34 Doc. 6], and then an Amended

6

Answer. [CV-34 Doc. 7]. Thereafter, the parties filed numerous pretrial motions not relevant here. On June 26, 2013, counsel for AHC5 moved to withdraw from further representation of Plaintiff. [CV-34 Doc. 28]. The Magistrate Judge granted the withdrawal request by AHC5's counsel on June 28, 2013, and ordered Plaintiff AHC5, a limited liability company, to obtain new counsel within ten days from the entry of the order or suffer dismissal. [CV-34 Doc. 29].

On July 1, 2013, Great Oak filed a motion seeking to intervene. [CV-34 Doc. 30]. Great Oak explained that AHC5 had defaulted under its agreement with UCB which, in turn, enabled UCB to direct the disposition of its collateral – AHC5's rights pursuant to the promissory notes, deeds of trust, and guaranties executed by the Defendants and assigned to AHC5, as well as AHC5's position regarding the arbitration award – in which it held a security interest. [CV-34 Doc. 32 at 2]. UCB thereafter brought about the sale and transfer of those rights to Great Oak on June 26, 2013. [Id.]. Thus Great Oak sought to intervene as a matter of right five days after this transaction with the filing of its intervention motion. Great Oak's motion asserted that it then had, by virtue of its acquisition of AHC5's position, an interest in the subject matter of the action, that the disposition of the action

would impair its ability to protect that interest, and that its interest was not adequately represented by the existing parties.  [Id. at 3].

On August 12, 2013, the Court entered an Order dismissing the 12-CV-34 matter without prejudice due to AHC5's failure to retain counsel. [CV-34 Doc. 34].   As a part of that Order, the Court (erroneously) denied as moot Great Oak's motion to intervene.  [Id. at 2].    On September 9, 2013, Great Oak filed a motion to amend or correct the Court's August 12, 2013, dismissal Order pursuant to Fed.R.Civ.P. 59(e). [CV-34 Doc. 41].[6] After receiving briefs by both sides regarding Great Oak's Rule 59 motion, the Court entered an order vacating that part of its August 12, 2013 Order denying as moot Great Oak's motion to intervene.  [CV-34 Doc. 48]. The Court then granted Great Oak's motion to intervene recognizing that "Great Oak's claims are identical to those asserted by AHC5 and that by intervening in the action Great Oak seeks to 'step into the shoes' of AHC5 as the new owner of the Cornblum loans."  [Id. at 9].  Upon receipt of the Court's permission to intervene, Great Oak filed its Intervener Complaint November 26, 2013.  [CV-34 Doc. 52].  Following the filing of Defendants' Answer [CV-34 Doc. 57], Great Oak moved to stay discovery in this matter, and to consolidate this case with 12-CV-69, or in the alternative, to stay this

---

[6] Great Oak also filed a notice of appeal [CV-34 Doc. 40] as to the Court's August 12, 2013 Order, which it later voluntarily dismissed.  [CV-69 Doc. 55].

case pending the resolution of case 12-CV-69.  [CV-34 Docs. 61; 62; 63].

Great Oak's three motions remain pending at this time.

## II.    Case Number 2:12-CV-69.

The factual history underlying case 12-CV-69 mirrors that of case 12-CV-34.  The procedural history of case 12-CV-69 closely tracks that of case 12-CV-34 with one important exception.  AHC5 commenced the 12-CV-69 action by filing a Motion for Order Confirming Arbitration Award pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., naming as respondents natural persons Marshall, Madeline, Michael, and Carolyn Cornblum, and the limited liability company Longbranch.  [CV-69 Doc. 1]. Much like what transpired in the 12-CV-34 case, following the start of this action the parties filed numerous motions. These motions, including Great Oak's motion to intervene [CV-69 Doc. 36], were ruled moot when the Court dismissed the matter without prejudice based upon AHC5's failure to obtain new counsel.   [CV-69 Doc. 42].  Like the procedural history in 12-CV-34, the Court partially vacated its dismissal order following Great Oak's request to do so made pursuant to Fed.R.Civ.P. 59.  Upon the Court's granting Great Oak permission to intervene, Great Oak filed its petition to confirm the arbitration award.  [CV-69 Doc. 58].  The Defendants filed a response in opposition thereto.  [CV-69 Doc. 63].  Three months later, on

April 28, 2014, the Defendants filed a motion to dismiss this matter for lack of subject matter jurisdiction. [CV-69 Doc. 66]. Great Oak's petition to confirm the arbitration award, the Defendants' response thereto, and the Defendants' motion to dismiss for want of jurisdiction, remain pending at this time.

## DISCUSSION

The Court begins by discussing the two pending motions in case number 12-CV-69: the Defendants' motion to dismiss for want of subject matter jurisdiction and Great Oak's petition to confirm the arbitration award. For obvious reasons, the Court will address the Defendants' dismissal motion first.

The Defendants have divided their dismissal motion into three subparts. They contend:

> First, when Great Oak purchased the Final Award on June 26, 2013, AHC5 no longer had Article III standing to pursue the AHC5 Action, and the Court no longer had subject matter jurisdiction over the AHC5 Action under Article III of the U.S. Constitution. Second, the Court did not have subject matter jurisdiction to allow Great Oak to intervene in the AHC5 Action when the Court did not have subject matter jurisdiction over the AHC5 Action, and the Court's only remaining function is to dismiss Great Oak's Petition. Third, the Court cannot exercise discretion to treat Great Oak's Petition as a separate action, because Great Oak has failed to assert a separate and independent basis for the Court's subject matter jurisdiction over Great Oak's Petition.

[CV-69 Doc. 66 at 5-6].

The Defendants first argue that on June 26, 2013, when Great Oak purchased AHC5's rights and position from UCB, AHC5 lost its "personal stake" in the outcome of this action "and the Court no longer had subject matter jurisdiction over the AHC5 Action under Article III of the U.S. Constitution." [Id. at 6]. Defendants' argument is a <u>non</u> <u>sequitur</u>. While AHC5 may have lost its personal stake in the outcome on June 26, 2013, and, therefore, its standing to pursue the Final Award, the Court still had before it the contested question of whether the arbitrator's Final Award should be confirmed. Thus Article III's jurisdictional requirement of an actual "case or controversy" remained satisfied. <u>Lewis v. Continental Bank Corp.</u>, 494 U.S. 472, 477 (1990). Further, the Defendants' argument runs headlong into the Federal Rules of Civil Procedure. As Great Oak points out,

> the very purpose of Rule 24(a)(2) intervention, as well as Rule 25(c) substitution, is to achieve judicial economy and fairness to the acquiring party by permitting the lawsuit to continue in the acquiring party's name in those circumstances where the original plaintiff lost its interest to the intervenor/substituted party. The fact that the action is subject to dismissal as against the original plaintiff does not alter the acquiring party's right to intervene.

[CV-69 Doc. 68 at 8]. AHC5 may have lost its right to pursue the Final Award following its default to UCB when UCB recovered and sold AHC5's

rights to Great Oak. The Court, however, never lost its "case or controversy" jurisdiction. The debt at issue was owed to *some* entity. Therefore, this Court has subject matter jurisdiction to hear Great Oak's motion for confirmation of the Final Award as the successor-in-interest to AHC5 and as the intervenor herein. Defendants' first ground for dismissal is without merit.

Defendants next argue that, after the Court entered an Order of Dismissal on August 9, 2013, which dismissed AHC5 Action, the Court possessed no subject matter jurisdiction over this matter under Article III because no "case" or "controversy" existed any longer. [CV-69 Doc. 67 at 11]. Conveniently omitted by Defendants from their memorandum is the fact that Great Oak filed its motion to intervene on July 1, 2013, well over one month before the Court dismissed AHC5 from this matter. [CV-69 Doc. 36]. Had the Court not erroneously denied as moot Great Oak's motion to intervene at the time it dismissed AHC5, Defendants would have no basis to put forward this argument. The Court's October 2013 Order correcting its preceding August 2013 Order was effective nunc pro tunc to the erroneous denial of Great Oak's motion to intervene. Defendants' second ground for dismissal is thus meritless.

Finally, Defendants assert that the Court's allowing Great Oak to intervene was a futile act because Great Oak's Petition does not allege a separate and independent basis for diversity jurisdiction. "Rather, it relies solely on the diversity jurisdiction between AHC5 and Respondents existing at the commencement of the AHC5 Action." [CV-69 Doc. 67 at 17]. For this case to continue any further with Great Oak as intervenor, Defendants contend that complete diversity must exist between them, on the one hand, and Great Oak on the other. And, since Great Oak – being a limited liability company – must show that its members and owners are completely diverse from all of the Defendants and it "has not disclosed the name and citizenship of each of its constituent members, it has not established diversity of citizenship between [itself] and Respondents." [Id. at 18].

Had Great Oak been the original plaintiff bringing this action, the Defendants' argument would be correct. Great Oak, however, became the intervenor only after AHC5 properly filed this diversity action and only after AHC5 defaulted on its obligations to UCB, two events completely beyond the control of Great Oak and the latter of which necessitated its intervention. The Supreme Court, under circumstances such as these, has construed 28 U.S.C. § 1332 so as to relax the "complete diversity" rule following the initiation of a civil diversity suit. In Freeport–McMoRan, Inc. v.

13

K N Energy, Inc., 498 U.S. 426 (1991) (per curiam), the Court held that the existence of diversity jurisdiction must be evaluated at the time the action was filed, not at the time a claimant seeks to intervene.

> Our decision last Term in Carden [v. Arkoma Assoc., 494 U.S. 185 (1990)] considered whether the citizenship of limited partners must be taken into account in determining whether diversity of jurisdiction exists in an action brought by a limited partnership. The original plaintiff in Carden was a limited partnership; diversity of jurisdiction, then, depended upon whether complete diversity of citizenship existed at the time the action was commenced. But nothing in Carden suggests any change in the well-established ruled that diversity of citizenship is assessed at the time the action is filed. We have consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction is not divested by subsequent events.

Id. at 428.   The Court's rationale underlying Freeport–McMoRan is all the more forceful in this matter since the petitioner in Freeport–McMoRan, like Great Oak here,

> was not an "indispensable" party at the time the complaint was filed; in fact, it had no interest whatsoever in the outcome of the litigation until sometime after suit was commenced. Our cases require no more than this. Diversity jurisdiction, once established, is not defeated by the addition of a nondiverse party to the action. A contrary rule could well have the effect of deterring normal business transactions during the pendency of what might be lengthy litigation. Such a rule is not in any way required to accomplish the purposes of diversity jurisdiction.

Id. at 428-29.   For these reasons, Defendants' final ground for dismissal is without merit.

Having determined that it retains subject matter jurisdiction in this case, the Court next addresses the Defendants' three contentions in opposition to Great Oak's petition to confirm the Final Award.

The Supreme Court has made clear that Congressional policy, specifically a preference for the arbitration of disputes when the parties to a contract so agree, favors such manner of resolution over litigation.

> Section 2 [of the FAA] is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.

Moses Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24 (1983); in accord Rainwater v. Nat'l Home Insurance Co., 944 F. 2d 190, 194 (4th Cir. 1991) (per curiam).   To come within the purview of the FAA, 9 U.S.C. § 2 provides in pertinent part that a written provision in "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract … shall be valid, irrevocable, and enforceable[.]"   Id.   There is no question but that the parties' promissory notes for the purchase of real property in Swain and Jackson Counties evidences transactions involving commerce.  The Court

thus turns to the relevant provision contained within the promissory notes[7]

to which the parties agreed:

> ARBITRATION. Lender and Borrower agree that all disputes, claims end controversies between them whether individual, joint or class in nature, arising from this Note or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the financial services rules of Endispute, Inc., d/b/a J.A.M.S./ENDISPUTE or its successor in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any collateral securing this Note shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any collateral securing this Note, including any claim to rescind, reform, or otherwise modify any agreement relating to the collateral securing this Note, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Note shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed

---

[7] The Arbitration provision contained within the "Commercial Guaranty" agreements executed by the natural person Defendants is the same in all material respects as the corresponding provision contained within the promissory notes signed by Marshall and Madeline Cornblum. [CV-69 Doc. 1-4 at 3].

the commencement of an action for those purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

[CV-69 Doc. 1-2 at 3].

From the plain language of this provision, the Court concludes that this constitutes an agreement between the parties that they will arbitrate any disputes arising from the interpretation and enforcement of the terms of the promissory notes, deeds of trust, and guaranty agreements. Similarly, the parties agreed to arbitrate any disputes arising from the foreclosure proceedings regarding the real property which is collateral for the notes. Defendants do not dispute this requirement at all. In their Response to Great Oaks' motion to confirm, Defendants concede that the parties participated in an arbitration, that the arbitrator made proper findings, and that the arbitrator ultimately entered a Final Award. [CV-69 Doc. 63 at 3-4]. Defendants further agree that "[n]o request was made to correct the Final Award. The Final Award is final and conclusive on the merits of all claims submitted to arbitration." [Id. at 4]. It is further noted that the Defendants sought and obtained an order from the Superior Court to compel arbitration of this dispute pursuant to this contract provision. The fact that the dispute was subject to arbitration and properly arbitrated is not contested.

Defendants, however, present different arguments in their attempt to avoid the consequences of the arbitration they admit was proper. They argue that: (1) the doctrines of res judicata and collateral estoppel bar Great Oak's petition to confirm the Final Award; (2) Great Oak cannot confirm the Final Award in this Court because it is prohibited from doing so under North Carolina law; and (3) Great Oak was not a party to the arbitration and therefore does not have standing to seek confirmation of the Final Award. [Id. at 2]. The Court will address the Defendants' arguments seriatim.

This case having been brought as a diversity action, the Court looks to North Carolina substantive law as applicable to the Defendants' arguments concerning issue and claim preclusion. "The doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion) are companion doctrines which have been developed by the Courts for the dual purposes of protecting litigants from the burden of relitigating previously decided matters and promoting judicial economy by preventing needless litigation." Williams v. Peabody, 217 N.C.App. 1, 5, 719 S.E.2d 88, 92 (2011). Both doctrines share as a precondition to their application that the previous litigation asserted as a bar to the current action was the result of a final judgment on the merits. Id. at 6, 719 S.E.2d at 93.

Under North Carolina law, a dismissal of an action for lack of subject matter jurisdiction is not a final judgment on the merits. <u>Foreman v. Foreman</u>, 144 N.C.App. 582, 587, 550 S.E.2d 792, 796 (2001). In the parties' first appeal to the North Carolina Court of Appeals, the appellate court observed that a foreclosure instituted by power of sale is an expedited process governed by N.C. Gen. Stat. § 45–21.16. In order to exercise the power of sale granted in a loan document, the mortgagee or trustee must initiate a hearing before the clerk of court which, by statute, is narrow and limited in scope to the statutory duties specifically enumerated. <u>In re Cornblum</u>, --- N.C.App. at ---, 727 S.E.2d at 341. Critically, the statute prescribes precisely how to affect a foreclosure by power of sale and constrains the clerk's subject matter jurisdiction (or that of the superior court judge on appeal <u>de</u> <u>novo</u>) by prohibiting the clerk (or judge) from entertaining or ruling upon any matter beyond the four corners of the statute. "[H]ad the trial court actually issued findings regarding [the] respondents' Arbitration Motion, it would have exceeded its jurisdiction by addressing an issue not related to the six findings set forth in N.C. Gen. Stat. § 45–21.16(d)." <u>In re Pugh</u>, --- N.C.App. ----, 725 S.E.2d 22, 22 (2012). If the Defendants' desire was to suspend the foreclosure proceedings to permit arbitration, the proper method to accomplish this task

would have been to seek a temporary restraining order from the state superior court to halt the sale. N.C. Gen. Stat. § 45–21.34. Further, any such TRO must be obtained before the parties rights become "fixed" pursuant to N.C. Gen. Stat. § 45–21.29A, which states, "[i]f an upset bid is not filed following a sale, resale, or prior upset bid within the period specified in [Article 2A of Chapter 45], the rights of the parties to the sale or resale become fixed." Id.; In re Cornblum, --- N.C.App. at ---, 727 S.E.2d at 341.

The Defendants did not seek nor did they obtain a TRO halting the foreclosure proceedings to allow for the arbitration to go forward. They were successful in convincing the state court to compel arbitration, something it was without subject matter jurisdiction to do within the confines of a power of sale foreclosure proceeding. As a result, the Superior Court's ultra vires acts regarding the compulsion of arbitration or the confirmation of any final award were void ab initio and in no way a final judgment on the merits. In other words, even though the Superior Court did not have the jurisdiction to decide the arbitration question, it did *not decide* the question against the intervenor or its predecessor. Without a final judgment deciding the matter, Defendants' argument that the doctrines

of res judicata and collateral estoppel apply to bar Great Oak's efforts to confirm the Final Award in this Court must fail.

Defendants' second argument is that since Great Oak could not obtain a judgment confirming the Final Award from a North Carolina state court, this Court sitting in diversity cannot confirm the Final Award either. Defendants argue that, since the Swain County Superior Court – in the midst of a foreclosure by power of sale proceeding – was without jurisdiction to compel arbitration or confirm the Final Award, Great Oak cannot confirm the Final Award in this Court because it is prohibited from doing so under North Carolina law. Defendants cite <u>Angel v. Bullington</u>, 330 U.S. 183 (1947) in support of their argument. Defendants, however, read far too much into <u>Angel</u>.    <u>Angel</u> stands for the proposition that a federal court in North Carolina, sitting in diversity, is the functional equivalent of another North Carolina court of general jurisdiction.    <u>Ergo</u>, if a North Carolina state court would be without subject matter jurisdiction to hear a claim, a federal court in North Carolina, sitting in diversity, would be precluded from hearing the same claim.

The flaw in Defendants' argument is that North Carolina courts *can confirm* arbitration awards, and *could have confirmed* the Final Award at issue in this case under North Carolina law.  As explained above, North

Carolina courts can enjoin a foreclosure sale and then hear a motion regarding arbitration, or the confirmation of a final award, provided it is not brought *within* the foreclosure proceeding under N.C. Gen. Stat. § 45-21.34.  See In re T.R.P., 360 N.C. 588, 597, 636 S.E.2d 787, 794 (2006) (the trial courts' subject matter jurisdiction is broad enough under § 45-21.34 to entertain arbitration motions). Accordingly, the holdings of Pugh and Cornblum simply teach that arbitration matters cannot be heard or considered *as a part of a foreclosure by power of sale proceeding under N.C. Gen. Stat. § 45–21.16.* Neither case stands for the proposition that North Carolina courts are without subject matter jurisdiction to hear them at all.  Because this Court is not prohibited from confirming the Final Award under North Carolina law, the Defendants' second argument also fails.

Finally, Defendants argue that Great Oak was not a "party" to the arbitration and therefore does not have standing to seek confirmation of the Final Award.  [CV-69 Doc. 63 at 2].  While the language of section 9 of the FAA refers to a "party to the arbitration," this language was not intended to override commercial law pursuant to which a "secured party's disposition of collateral after default … [t]ransfers to a transferee for value all of the debtor's rights in the collateral." N.C. Gen. Stat. § 25-9-617(a)(1). See Kentucky River Mills v. Jackson, 206 F.2d 111, 120 (6th Cir. 1953)

(assignee of arbitration award was the real party in interest and entitled to sue in federal court to enforce the award). It is undisputed that Great Oak was the transferee of AHC5's rights following AHC5's default to UCB. Defendants' third argument thus fails.

The Court now considers the merits of Great Oak's Petition to confirm the Final Award rendered by the arbitrator. Consistent with the statutory framework, Great Oak made application to the Court to confirm the Final Award by filing a petition "in the manner provided by law for the making and hearing of motions[.]" [CV-69 Doc. 58]. 9 U.S.C. § 6. As required by 9 U.S.C. § 13, the party seeking to confirm an arbitration award must file with the Clerk of Court certain documents, including but not limited to, the agreement containing the arbitration clause, the award, and those papers bearing upon the parties' application to confirm, modify, or correct the award submitted previously to any other court. Id. § 13(a)-(c). Great Oak, in its Petition, adopted by reference the documents previously filed by AHC5 in this matter. [CV-69 Docs. 1-1 to 1-21]. The Court concludes Great Oak's filings comply with 9 U.S.C. § 13 and establish the basis for confirming the Final Award. As noted by the Fourth Circuit, there is little left for this Court to do.

A confirmation proceeding under 9 U.S.C. § 9 is intended to be summary: confirmation can only be denied if an award has

been corrected, vacated, or modified in accordance with the Federal Arbitration Act. Under the Act, vacation of an award is obtainable by serving a motion to vacate within three months of the rendering of the award. 9 U.S.C. § 12.

Taylor v. Nelson, 788 F.2d 220, 225 (4th Cir. 1986).

While the Defendants, in one of the thirteen state court foreclosure proceedings, filed a Motion to Vacate Arbitration Award [CV-69 Doc. 1-19] under 9 U.S.C. § 10,[8] they have not pursued that motion. They have now changed course and concede that the "Final Award is final and conclusive on the merits of all claims submitted to arbitration." [CV-69 Doc. 63 at 4]. Any such motion to vacate has been abandoned. In this forum, the Defendants have chosen to pursue purely legal objections focusing on whether this Court has the power to entertain Great Oak's Petition, not whether the Final Award is subject to vacatur or modification.[9] Since the Defendants have abandon any arguments concerning whether the Final Award should be vacated, corrected, or modified, and since the Court has

_____

[8] Section 10 of the FAA sets forth the permissible grounds for seeking the vacatur of an award. Such grounds include but are not limited to evidence showing that an award was procured by fraud, the arbitrator was not impartial, the arbitrator engaged in procedural misconduct during the arbitration, or the arbitrator exceeded her powers. 9 U.S.C. § 10(a)(1)-(4).
[9] Section 11 of the FAA sets forth the permissible grounds for seeking modification of an award. Such grounds include but are not limited to evidence showing that the award contained material miscalculation of figures, the arbitrator awarded upon a matter not submitted, or the award is imperfect in form not affecting the merits. 9 U.S.C. § 11(a)-(c).

determined the Defendants' legal challenges to be without merit, the Court concludes that it must confirm the Final Award.

**ORDER**

Accordingly, **IT IS, THEREFORE, ORDERED** that the Motion to Dismiss for Lack of Jurisdiction [CV-69 Doc. 66] filed in case number 12-CV-69 on behalf of Respondents Marshall E. Cornblum, Madeline Cornblum, Michael Cornblum, Carolyn Cornblum, and Longbranch Properties, LLC, is **DENIED** and that Intervenor Great Oak NC Lender, LLC's Petition to Confirm Arbitration Award filed in case number 12-CV-69 [CV-69 Doc. 58] is **GRANTED.**

**IT IS FURTHER ORDERED,** pursuant to 9 U.S.C. §§ 2, 6, and 9, that the Final Award of the Arbitrator [CV-69 Doc. 63-1] rendered September 20, 2010, is **CONFIRMED** as part of the Judgment of this Court.   In accordance with the Final Award, Great Oak NC Lender, LLC shall have and recover:

(a)   Against Respondents Marshall E. Cornblum and Madeline H. Cornblum, jointly and severally, in the principal and interest amount of

$9,547,760.86, plus attorneys' fees in the amount of $1,432,164.13, for a total award of $10,979,924.99, and

(b)  Against Respondents Longbranch Properties, LLC, Michael Cornblum and Carolyn Cornblum, jointly and severally, in the principal and interest amount of $3,922,923.00, plus attorneys' fees in the amount of $588,438.56, for a total award of $4,511,362.10, and

(c)  For interest pursuant to 28 U.S.C. § 1961 on the amounts not yet collected and still due and owing under paragraphs (a) and (b) above, from September 20, 2010 until the date of collection.

**IT IS ALSO ORDERED** that Great Oak NC Lender, LLC's Motions to Consolidate Cases, to Stay Discovery, and to Stay the Case, all filed in case number 12-CV-34 [CV-34 Docs. 61; 62; 63], are **DENIED AS MOOT.**

**FINALLY, IT IS ORDERED** that the amount of $10,979,924.99 owed by Respondents Marshall Cornblum and Madeline Cornblum should be offset by proceeds in the amount of $5,325,504.30 of which $2,947,419.20 should offset the amount of $4,511,362.10 owed by Respondents Michael Cornblum, Carolyn Cornblum, and Longbranch Properties, LLC, and the costs of both actions, case number 12-CV-34 and case number 12-CV-69, shall be taxed to the Respondents, jointly and severally.

**IT IS SO ORDERED.**

Signed: August 28, 2014

Martin Reidinger
United States District Judge